Not Recommended for Publication or Citation

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 7:08-CV-105-KKC

TIMOTHY JASON BROOKS                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

MR. S. SILVA, et al.                                                    DEFENDANTS

**** **** **** ****

Timothy Jason Brooks, an individual in the custody of the Federal Bureau of Prisons ("BOP") and currently incarcerated in the United States Penitentiary, in Tucson, Arizona, has initiated a *pro se* civil action. With the Complaint, he also submitted a Motion to Proceed *in forma pauperis*. The Motion was granted and installment payments toward the filing fee were ordered in a previous Court Order.

The Complaint is now before the Court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997). In the Court's screening, the Complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in the Plaintiff's complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

CLAIMS

The events complained-of in the Complaint are alleged to have occurred when the Plaintiff was housed in another BOP facility, the United States Penitentiary-Big Sandy ("USP-Big Sandy"), Inez, Kentucky. The Court purportedly has jurisdiction under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), for the civil rights

claims, and jurisdiction under the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§ 1346(b), 2671-2680, for a negligence claim.

Brooks specifically claims that the named Defendants (1) applied excessive force and refused him any exercise, in violation of the Eight Amendment of the U.S. Constitution; (2) conspired to deprive him of his civil rights, actionable under 42 U.S.C. § 1985(3); (3) violated his due process rights, in confiscating his personal property and keeping him in the prison's Segregated Housing Unit ("SHU") without any of the required monthly hearings; and (4) were negligent with regard to his personal property such that his property was lost.

## DEFENDANTS

As the Defendants, Brooks has named the following personnel in USP-Big Sandy's SHU: (1) Officer S. Silva; (2) Officer Taylor; (3) Officer Guy; (4) Officer Tuttle; (5) Officer Gillman; and (6) Lt. Nix, all of whom are sued in their official and individual capacities. His seventh named Defendant is the United States of America, the only permissible Defendant for an FTCA claim. Plaintiff also states his intent to name and sue unknown custody officers.

## RELIEF REQUESTED

Plaintiff seeks a jury trial; damages, including both compensatory and punitive; and injunctive relief in the form of the Court's ordering that cameras be placed in the law library and that the Defendants be fired.

## FACTUAL ALLEGATIONS

The following is a summary of Plaintiff's allegations, as contained in answers which he has hand-printed on a common complaint form and in attached documentary exhibits. Record No. 2.

All of the complained-of events are alleged to have taken place in USP-Big Sandy's SHU, where Brooks was placed and continually held, based only upon his criminal offense. According to the July 25, 2007, request for a remedy which he wrote to staff, Brooks was taken into the SHU on December 18, 2005, and remained there with no monthly reviews of that action and no opportunities for recreation. He initiated

2

BOP Administrative Remedy Number 463068, seeking relief from his prolonged SHU detention without review. According to his exhibits, Plaintiff exhausted the issue by writing to the final, National level of appeal just before filing this Complaint.

Brooks initiated Administrative Remedy Number 463067 at approximately the same time. In it, he charged that he had twice been assaulted by SHU guards, attacks motivated by his criminal offense, not having any "penological interest whatsoever." The first assault purportedly occurred in a cell, on May 17, 2007, when Defendants Taylor and Guy twisted Plaintiff's arms and then Taylor used the food tray door to smash his arms. Brooks claims that as a result of this first assault, he has "scratches that have left scars that are still evident, and soreness to the shoulder and elbow of the left arm."

The second purported assault took place on May 23, 2007, when Defendant Silva took Plaintiff to the law library and there assaulted him. Silva is alleged to have "maliciously and sadistically hit the plaintiff in the head," telling Plaintiff that he did it because he doesn't like Brooks' crime or his "litigating." As to the injuries allegedly suffered in this attack, Plaintiff has written as follows:

> That resulted in a plumb [sic] size knot on the forhead [sic] above the right eye, which became a black-eye a week later; scratches on Brooks' face; pain in the lower back and joints; Books became extremely paranoid of guards plotting to kill him or cause more physical pain. Brooks woke up with nightmares and needed to take medication to deal with the anxiety and post traumatic stress symptoms.

Record No. 2 at 3.

Plaintiff contends that Silva took him to the law library with the purpose of assaulting him, as the lack of cameras there has facilitated attacks on inmates by guards in the past. Additionally, he alleges that Silva made up a story and an incident report to excuse his use of force, the officer purportedly explaining the injuries as occurring in his attempt to control Brooks when the prisoner spat at him. The Plaintiff insists, however, that he has "fifteen years of well documented behavior. You can't find one incident where I spit at or on a guard. I have never assaulted anyone, guard or inmate. It is against my character."

3

Plaintiff claims that he did all he could do to exhaust these claims administratively, but before he could even receive the Warden's responses to either #463067 or #463068, the BOP transferred him across the country, a move which interrupted his mail and his administrative efforts. Brooks claims that he left USP-Big Sandy on August 24, 2007, and other attachments show that he did not arrive at USP-Tucson until November 7, 2007. Nonetheless, upon arrival and receipt of forwarded mail, Plaintiff resumed the administrative process on both claims. He states that he wrote appeals to the Regional Director and National Offices, sent a declaration to the Office of Internal Affairs, and also filed a tort claim under the FTCA when Kentucky's one-year statute of limitations was quickly running out.

Plaintiff has attached to his Complaint, two inmate injury assessments, one dated May 17th and the other May 23rd of 2007, the dates of the alleged assaults. Plaintiff has written allegations on several exhibits. For instance, in the August 29, 2007, Response to Remedy No. 463068, the warden wrote that the prisoner was placed in SHU "to be separated from white supremacy groups," but Brooks has written thereon that this was not true, as he was actually in "protective custody because of his sex offense, which every race is a threat to."

Attached exhibits also include a copy the May 1, 2008, letter from the BOP acknowledging receipt of Brooks' FTCA claim for $5,248.94 "for alleged loss of personal property and personal injury at USP Big Sandy." Most of the attachments to Brooks' Complaint, however, are documents exchanged in the BOP administrative remedies numbered #463067 and #463068 and/or documents concerning the interruption in that process purportedly occasioned by his transfer, as well as copies of his attempts to resume the two processes once he was re-located.

Claiming that he has done "everything humanly possible to ensure every avenue of administrative remedy was exhausted" and having attached copies of these efforts, Brooks filed the instant Complaint on May 14, 2008.

4

<u>DISCUSSION</u>

The Court begins with its jurisdiction to entertain the claims presented in the instant Complaint. Subject matter jurisdiction is the unwaivable *sine qua non* for exercise of the federal judicial power. *Richmond v. International Business Machines Corporation*, 919 F. Supp. 107 (E.D.N.Y. 1996) (citing Fed. R. Civ. P. 12(b)(1)). The lack of subject matter jurisdiction may be asserted by either party or by the court, *sua sponte*, at any time during the course of an action. *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939); *Bell v. Hood*, 327 U.S. 678, 681-82 (1946); *Morrison v. Tomano*, 755 F.2d 515 (6th Cir. 1985). For the reasons discussed below, the Court finds that it does not have jurisdiction over two of the instant Plaintiff's claims.

As a sovereign power, the United States has immunity protecting it from suit. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Waivers of sovereign immunity are to be strictly construed, *see Spannaus v. Department of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987).

Consistent therewith, a plaintiff may not avoid the bar of sovereign immunity simply by naming individual federal officials of the United States. *Ecclesiastical Order of the Ism of Am v. Chasin*, 845 F.2d 113, 115 (6th Cir. 1988) (citing *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982)). When damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 874-75 (9th Cir. 1975). Accordingly, the claims against the six (6) named Defendants in their official capacities must be dismissed.

However, under *Davis v. Passman*, 442 U.S. 228 (1979), the Court has federal jurisdiction under 28 U.S.C. § 1331 for damage claims against individual federal officers, if they are sued in their individual capacities for violations of Constitutional rights. Since the instant Plaintiff's allegations are made against

5

the six federal officials in their individual capacities, as well as their official capacities, therefore, the Court next examines whether he has stated a cognizable federal claim against any or all of the individual Defendants.

It is well settled that to state a claim that is cognizable as a civil rights action, pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), a plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or other laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Id.* at 397.

There is no question that the individually named Defendants herein, all BOP employees, were acting under color of federal law. Accordingly, the Court turns its inquiry to whether the Plaintiff has shown that each named Defendant has deprived him of his rights under the Constitution or other federal law.

*Bivens* requires a showing that the named defendant performed specific acts that resulted in the deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *Bivens*, 403 U.S. at 390 n.2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998). Liability under *Bivens* is personal and is based upon each defendant's own constitutional violations. *Trulock v. French*, 275 F.3d 391, 402 (4th Cir. 2001). Because there are no allegations of specific acts by Defendants Tuttle, Gillman, and Nix, they are entitled to dismissal for the Plaintiff's failure to state a claim against them.

The second jurisdictional issue also springs from the United States' sovereign immunity. A corollary to the doctrine of governmental immunity is that, when the United States consents to be sued, Congress may define the conditions under which suits will be permitted. *Kendall v. United States*, 107 U.S. 123 (1882). Congress has waived sovereign immunity to a limited extent in the  Federal Tort Claims Act.

In the FTCA, Congress set out the circumstances under which the U.S. government consents to be sued in negligence:  "for money damages,...for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the

6

scope of his office or employment...."  28 U.S.C. § 1346(b).  As a waiver of sovereign immunity, however, its terms are strictly construed, and all ambiguities are resolved in favor of the sovereign.  *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).  In the words of the Supreme Court, "[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended.  Neither, however, should we assume the authority to narrow the waiver that Congress intended."  *United States v. Kubrick*, 404 U.S. 111, 117-18 (1979).

In keeping with these principles, exceptions to the United States' liability, found in 28 U.S.C. § 2680(a)-(n), have been broadly construed.  *See e.g., Lurch v. United States*, 719 F.2d 333, 338 (10th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984).  Such is exactly what happened when the exception relevant herein came before the Supreme Court.

28 U.S.C. **§** 2680, **Exceptions**, provides in pertinent part, as follows:

> The provisions of this chapter and section 1346(b) of this title shall not apply to–
> . . .
> **(c)** Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer . . . .

28 U.S.C.A. § 2680(c) (2000).  In *Kosak v. United States*, 465 U.S. 848, 854 (1984), the Supreme Court of the United States first broadly construed this exception and held that the phrase "arising in respect of" includes any claim "arising out of" the detention of goods, including negligent and intentional conduct, by government employees.  *Id.*

After *Kosak*, there arose a conflict in circuits' interpretations as to whether the BOP was included in the "other law enforcement officer" language of the exception.  Just this year, the Supreme Court has decided that issue in favor of the BOP, *i.e.*, a BOP officer is exempted from liability for such goods based upon a BOP officer being "any other law enforcement officer."  *Ali v. Federal Bureau of Prisons*, ___ U.S. ___, 128 S.Ct. 831 (January 22, 2008).

7

Consistent with *Ali*'s holding, this Court concludes that the instant Plaintiff's FTCA claim for loss of his personal property is barred by 28 U.S.C. § 2680(c). Because the waiver of liability does not extend to the BOP's detention of goods, this Court lacks subject matter jurisdiction to decide Brooks' loss-of-property claim. His other FTCA claim, for personal injury, may continue for now, and so the United States, the only proper defendant in an FTCA action, will remain a Defendant herein. 28 U.S.C. §§ 1346(b), 2401(b), 2679(a); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1387 (9th Cir. 1984).

Because this case will proceed to service of process and Brooks has indicated an intent to name SHU personnel, whose names he does not now know, as Defendants, he is advised of Federal Rule of Civil Procedure 4(m), which provides as follows:

> **Time Limit for Service**. If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j).

Fed.R.Civ.P. 4(m) (2007). Plaintiff is now on notice that if any John Doe defendants are not named and served within 120 days, then the claims against said John Doe defendants shall be dismissed pursuant to the terms of Rule 4(m).

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     The following are **DISMISSED**, *sua sponte*, without prejudice: (a) all claims against Defendants Tuttle, Gillman, and Nix; (b) all claims for damages against Defendants Silva, Taylor, and Guy, in their official capacities; and (c) all claims for negligent loss of prisoner property, under the FTCA.

(2)     Because Howell has been granted *pauper* status, an Officer of the Court will serve process on his behalf pursuant to FED. R. CIV. P. 4(c)(2) and 28 U.S.C. § 1915(d). The Pikeville Clerk's Office and

the Office of the United States Marshal ("USM Office") are hereby directed to serve the summons and Complaint as set forth below.

(3)      A Deputy Clerk in the Pikeville Clerk's Office shall prepare the documents necessary for service of process upon the following Defendants in this action:

        a.     The United States of America;
        b.     USP-Big Sandy Officer S. Silva, in his individual capacity;
        c.     USP-Big Sandy Officer Taylor, in his individual capacity;
        d.     USP-Big Sandy Officer Guy, in his individual capacity;

(4)      To facilitate service of process on the identified Defendants, the Deputy Clerk shall prepare "Service Packets" consisting of the following documents:

        a.     a completed summons form;
        b.     the Complaint [Record No. 2];
        c.     the Order granting Plaintiff *in forma pauperis* status [Record No. 5];
        d.     this Order; and
        e.     a completed USM Form 285.

If the Clerk is unable to fully and accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

(5)      For each identified Defendant, the Deputy Clerk shall prepare four (4) Service Packets to be provided to the USM Office in Lexington, Kentucky, addressed as follows:

        a.     to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;
        b.     to the Office of the Attorney General of the United States in Washington, D.C.;
        c.     to the Central Office of the Federal Bureau of Prisons in Washington, D.C. Federal Bureau of Prisons in Washington, D.C.; and
        d.     for personal service at the United States Penitentiary-Big Sandy, in Inez, Kentucky.

(6)      The Deputy Clerk shall send the required Service Packets for each Defendant by  certified mail to the USM Office in Lexington, Kentucky; and shall enter the certified mail receipt into the record.

(7)      The USM Office shall serve each identified Defendant as follows:

        a.     Sending a Service Packet for each identified Defendant by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

b. Sending a Service Packet for each identified Defendant by certified or registered mail to the Office of the Attorney General of the United States in Washington, D.C.;

c. Sending a Service Packet for each identified Defendant by certified or registered mail to the Central Office of the Federal Bureau of Prisons in Washington, D.C. Federal Bureau of Prisons in Washington, D.C.; and

d. Personally serving a Service Packet on each Defendant in his individual capacity, at the United States Penitentiary-Big Sandy in Inez, Kentucky, through arrangement with the Federal Bureau of Prisons; or by personal service wherever else he or she may be found.

(8) The USM Office is responsible for ensuring that each Defendant is successfully served with process. In the event that an attempt at service upon a Defendant is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(9) Within 40 days of the date of entry of this Order, the USM Office shall send a Service Report to the Pikeville Clerk's Office, which the Deputy Clerk shall file in the record, which states whether service has been accomplished with respect to each identified Defendant.

a. For each defendant to be served by certified mail, the Service Report shall include:
 i. the green card showing proof of service; or
 ii. a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

b. For each Defendant to be personally served, the Service Report shall indicate:
 i. that the defendant was successfully served personally, or
 ii. a statement explaining what efforts are being taken to locate the Defendant and accomplish personal service.

(10) The Plaintiff shall immediately advise the Pikeville Clerk's Office of any change in his or her current mailing address. **Failure to do so may result in dismissal of this case**.

(11) The Plaintiff must communicate with the Court *solely* through notices or motions filed with the Pikeville Clerk's Office. ***The Court will disregard correspondence sent directly to the judge's chambers.***

(12) With every notice or motion filed with the Court, the Plaintiff ***must***:

a. mail a copy to each Defendant (or his or her attorney); and

10

     b.     at the end of the notice or motion, certify that he has mailed a copy to each Defendant (or his or her attorney) and the date on which this was done. ***The Court will disregard any notice or motion which does not include this certification.***

Dated this 16th day of June, 2008.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**