UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
DIVISION AT PIKEVILLE

Eastern District of Kentucky
FILED
JUL 14 2008
AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

Timothy Jason Brooks,

v.                                              Case No. 7:08-cv-00105-KKC

S. Silva,
Mr. Taylor,                           AMENDED COMPLAINT
Mr. Guy,
Lieutenant Hapney,
Unknown officials,
United States of America

## I. Jurisdiction

This is a Civil action authorized by 28 USC 1331, Bivens 403 US 388 (1971); 28 USC 2671, Federal Tort Claims Act; and 42 USC 1985 (3)

## II. Plaintiff

Timothy J. Brooks, 86832-079    Convicted: 1999
U.S.P. Tucson
P.O. Box 24550
Tucson, AZ. 85734

Complaint - Brooks                  1                  June 20, 2008

## III. DEFENDANTS

1. S. Silva, Senior officer specialist, in his individual capacity, as an officer at U.S.P. Big Sandy, SHU, Inez, Ky.

2. Mr. Taylor, SHU officer in charge, in his individual capacity as an officer at USP Big Sandy, SHU, Inez, Ky.

3. Mr. Guy, SHU officer, in his individual capacity, as an officer at USP Big Sandy, SHU, Inez, Ky.

4. Mr. Hapney, SHU Lieutenant/Segregation Review Official, in his individual capacity, as an officer at USP Big Sandy SHU, Inez, Ky.

5. Unknown Officials, in their individual capacities at USP Big Sandy.

6. The United States of America; Its officers in their individual capacities at USP Big Sandy, Inez, Ky.

## IV. STATEMENT OF FACTS

A. ON MAY 17, 2007, THE DEFENDANTS, CONSPIRED TO, AND DID USE EXCESSIVE FORCE WITH NO PENOLOGICAL PURPOSE, WHEN THEY GRABBED BROOKS' ARMS AND BEGAN TWISTING THEM AND SMASHING BROOKS' ARMS WITH THE FOOD TRAY DOOR. BROOKS WAS SECURED IN THE SPECIAL HOUSING UNIT (SHU) FOR HIS OWN PROTECTION AT THE TIME.

1. At around 12:00pm, on May 17, 2007, officers Taylor and Guy, conspired with four other defendants to use excessive physical

Complaint - Brooks                2                June 20, 2008

force with no justifyable cause. The six officers then conspired together to lie about the incident.

2. Video record will show that using six guards to feed is very abnormal. Brooks only seen it happen once in four months at Big Sandy; only once in two years of being in SHU.

3. Brooks wanted to speak to officer Taylor about having missed breakfast, and not being served Kosher food, on a regular basis.

4. Bureau of Prisons, Program Statement 5566, Use of Physical force, requires officials to use Confrontation avoidance Techniques, before engaging in use of force. Uncalculated use of force is only used when an inmate poses a serious immediate physical threat to staff, others or Inmates.

5. At most, the Incident could call for calculated use of force but only if Confrontation avoidance techniques failed. None was attempted. The physical force was immediate, excessive, and done with malicious and sadistic intent.

6. After officer Guy, handed Brooks the lunch meal, Brooks put his arm through the food tray door and let it dangle. Brooks stated, "We are going to talk about my breakfast and why you guys are playing with my food."

7. Officer Silva and Gillman about eight feet from cell 242, where Brooks is. Officer Guy, who is standing directly in front of 242 gets Officer Taylors attention. Taylor and Guy, walk close to the door one on each side to block the camera's view.

8. Taylor says, "Put your arm in the door." Brooks replies, "Not till we talk about this." Taylor states, "I-formation". Looks around and grabs my left hand and begins twisting Brooks' left arm.

COMPLAINT-BROOKS                    -3-                    June 5, 2008

9. As Taylor twisted Brooks' arm, he began using his hip to lift the door. Taylor stands approximately 6 foot 5 inches and weighs around 230 pounds.

10. Brooks placed his right hand through the tray door to use his weight, to prevent his arm from being smashed. Taylor looks at Guy and nods toward Brooks' right arm. Guy takes the hand and begins applying force.

11. Taylor renews his efforts at twisting and uses his weight to push and slam the tray door against Brooks' arms.

12. Taylor directly caused, with Guy as his accomplice, scratches and bruising to the inner arm, which left scars that are still evident. The twisting caused pain in the shoulder and elbow. See, Appendix (App.) Dec. 7-11 and TRT-67.

13. Taylor allowed the trap door to open, then began bending Brooks' fingers. Brooks allowed his arms to be placed back in the door. The tray door was then secured.

14. An hour later a Lieutenant came to Brooks asking him if he had any injuries to report. Brooks was escorted into the office where ten guards crowded around Brooks in a threatening manner. "Take his cuffs off," several of them state. Brooks fears he is going to be beat down by all the guards.

15. Silva begins pushing Brooks to the back of the office. He puts his knee into Brooks' left thigh, causing pain. His face is red, and he is mumbling. He appears out of control. Silva stands approximately 6 foot 7 inches and weighs near 270. He is saying: "You want trouble? We can take those cuffs off. You want to mess with me, I'm a grown man! You want to fondle me you sick child mol..." He looks to the Lieutenant as if to say, 'Sorry, I can't stop myself from saying this.'

COMPLAINT - BROOKS         -4-              June 5, 2008

16. After Physicians Assistant Sexauer, made the injury assessment, The Lieutenant asked, "Do you want to report this injury?" Brooks said he did. The Lieutenant turned to Taylor and stated, "I guess this all has to be written up." Taylor replied, "I'll write it all." The Lieutenant looked at Brooks and said to Taylor, "Make sure each accounts a little different."

17. The Lieutenant stated that Brooks "grabbed one of my officers' belt." But the camera record will show this to be a lie, that is used to justify the immediate use of force.

18. The use of force was unjustified because Brooks only wanted to talk to the officers about his food. Proof of this comes from earlier that day, during breakfast.

19. Guy served breakfast, and told Brooks that no kosher meal was sent for him. Brooks put his arm through the tray door and stated, "You give me what I got coming and I'll give you what you got coming. I want my issue of milk and the Kosher tray."

20. Guy gives Brooks two milks and says, "I called the kitchen they will bring the Kosher Tray when they pick up the carts."

21. Upon hearing this Brooks removed his arm and allowed the tray door to be secured. The breakfast tray was never brought to Brooks. Brooks believes that officials were using the food to provoke Brooks with harassment so that he would become angry and do something that would justify use of force.

22. The harassment was motivated by two things — Brooks' criminal offense and the filing of administrative remedies.

23. Brooks character and history do not indicate a need for use of physical force in this situation. Brooks is a program prisoner and non-violent, who stands 5 foot 6 inches, weighs 180 pounds.

COMPLAINT - BROOKS          -5-          June 5, 2008

24. Every guard involved conspired in the lie to cover up the unjustified excessive use of force.

## STATEMENT OF CLAIM

25. Officer Taylor and Guy, in their individual capacity used excessive force without legitimate penological justification, which violated Brooks rights and constituted cruel and unusual punishment under the eighth amendment to the United States Constitution.

26. The United States of America, through its agents, Taylor and Guy acting in their individual and official capacities, by unjustified excessive use of force, displayed gross negligence, in violation of Federal regulation 28 CFR 552; B.O.P. P.S. 5566; and any relevant state statute unknown to the plaintiff. Making the United States of America, liable under 28 USC 2671.

27. Defendants Taylor, Guy, Silva, Tuttle, Gillman and other unknown officials conspired to deny Brooks' civil rights by being present while unjustified excessive force was used, doing nothing to stop it and then lying to cover up cruel and unusual punishment, which violated Federal statute 42 USC 1985(3).

B. ON MAY 23, 2007, DEFENDANTS, GUARDS AT BIG SANDY, SHU, MALICIOUSLY AND SADISTICALLY ASSAULTED BROOKS WHILE HE WAS HANDCUFFED BEHIND HIS BACK. DEFENDANTS CONSPIRED TO LIE AND COVER-UP THE ASSAULT.

28. From May 17, 2007, until May 23, 2007, every day that Defendant Silva worked, he made threats of bodily injury to Brooks

The threats were made covertly. Silva would say to Brooks, "Hey Brooks, I want to take you to rec (recreation)", and I know you don't go out, but I want to take you out." A couple times he said," Brooks, you ain't eatin? Come on I put something special in the bag for you."

29. In prison, in SHU, it is common knowledge that when a person tells another "go to rec" or "I'll see you at rec," the person is calling the other person out to fight. It is a covert threat that guards understand. Silva, by saying these words, was telling Brooks that he wanted to assault Brooks.

30. On May 23, 2007, at 12:00 p.m. Silva was serving lunch. He stuffs a bag in the food door and states," Brooks, you might as well eat, I've been writing down that you've been eating. You took a breakfast bag."

31. Brooks was not eating and did not accept a breakfast bag. Silva had pushed the breakfast bag in the door even though Brooks refused it. The bag was never touched. Brooks has two eye witnesses who will testify to this fact. One a prison official the other Brooks' cellmate.

32. Brooks replied," If that's the case, then no more food comes in this cell, for me or my celly." Brooks' cellmate, Richard Lone dog, state" you're not going to fuck with my time."

24. Silva asked," Hey Brooks, you want to go to the law library?" Brooks thought about it a minute and replied," yeah, in fact I do."

25. Brooks had hoped that the threats were just bluffs, to scare Brooks, as Dr. Midkiff had suggested.

26. Silva replied," give me a minute." Upon information and belief, Silva left the range to tell the other officers that he was going to take Brooks to the law library for a "lesson in law."

COMPLAINT-BROOKS                    -7-                    June 5, 2008

27. It was common knowledge in SHU, among the officers that Silva had been threatening Brooks. None of the defendants did anything to stop Silva, or protect Brooks.

28. Officer Guy was at the control box, and opened cell D-242, where Brooks was housed. Silva escorted Brooks to the law library.

29. As Brooks and Silva walked, Silva stated "I'm gonna teach you about law." Brooks replied "Make it good it will cost you your job." Both Guy and Silva escorted Brooks to the law library.

30. As Brooks nears the law library, Guy pulls on his arm. Brooks turns to see officer Tuttle, take Silva, into the property room. When Silva returned, Brooks noticed that he had removed his button up, grey work shirt, and was only wearing a black T-shirt.

31. Tuttle and Guy leave the hallway area and Silva pushes Brooks into the law library and turns him, his back to the wall. Brooks looks at Silva's sternum, then up to his face.

32. Silva is red faced and wild eyed. He is whispering in an agitated voice "You wanna fondle me, huh? You gonna keep filing? You want to file on me?" Brooks is confused by the two unrelated statements, but Brooks answers, "No, I don't."

33. Silva steps back as if to leave and Brooks looks down thinking he is leaving and that Dr. Midkiff was right. The next thing Brooks sees is the lens of his eye glasses spinning on the floor, which is about seven inches away, Brooks is on his knees, wondering how bad Silva will beat him.

34. Silva begins lifting Brooks with one hand on his collar and the other at the waist band of the jumpsuit Brooks wears. Brooks begins to stand, but is thrown over a nearby desk. Brooks does not move as Silva readjusted his grip.

Complaint - Brooks          -8-          June 5, 2008

35. Silva, slings Brooks towards the law library entrance. Brooks is hand cuffed from behind and can not break his head long ~~the~~ descent.

36. Silva, puts his knee into Brooks' lower back and begins lifting up on Brooks cuffed hands, causing Brooks to growl out a painful howling grunt, then repeats it again. Silva pushes his officer alert button. Silva takes his knee off of Brooks back as other officers arrive, one female holding a video camera.

37. Brooks is not moving, but all officers are twisting Brooks' legs and applying various painful holds. "That's enough," Brooks hears Lt. Nix say. Brooks looks up to Lt. Nix, and sees him gesture to Silva to leave the area.

38. Brooks is lifted from the ground and taken to the Lieutenants' office. Brooks nods toward Silva, and states, "That man assaulted me." Silva replies "You spit on me" pointing to a wet spot on his grey button up work shirt. See, Appendix, Dec-12-15 for greater detail of the incident.

39. Brooks was taken into the nurse's station for an Injury assessment. See, Appendix TRT-68. When Silva hit Brooks, the blow caused Brooks to spin to his right, his forehead connecting with the cinder block wall. This broke his personal eyeglasses, caused plum sized knot above Brooks' right eye, that later became a black-eye. Brooks had various scratches on his face. Pain in Brooks lower back, foot, face and joints lasted for a month, which made it hard for Brooks to chew food or sleep or sit without pain.

40. Brooks could not sleep without having nightmares of guards coming in to Brooks' cell to assault him. The emotional damage caused Brooks to start taking medication, the side effects of

COMPLAINT- BROOKS -9- June 5, 2008

which are a burden on Brooks life. Brooks still doesn't trust the guards completely because of this incident at Big Sandy.

41. Dr. Midkiff, a psychologist, at Big Sandy came to see Brooks, a couple hours after Silva hit Brooks. Brooks told Dr. Midkiff everything that happened. Brooks asked Dr. Midkiff to collect the Grey shirt that Silva was wearing for D.N.A. Testing, because that would prove beyond doubt that Silva was lying. She said she could not take the shirt.

42. Two days later, Dr. Midkiff, assured Brooks, that she had "e-mailed the right people, They're looking into this," when Brooks asked her if the incident was being investigated. When no one came to interview Brooks, by August, Brooks began the administrative remedy procedure, which was "referred to Office of Internal Affairs." See, APPENDIX, AR-24-26.

43. The response of the warden (APP.-AR24) shows that there was an attempted cover-up. The issue would never have seen The Office of Internal Affairs had Brooks not filed the BP-229.

44. After the assault, Officer Taylor, would come by Brooks' cell and say, "Snitches get Stitches," or singing, "Mamas don't let your babies grow up to be Snitches" like the Willie Nelson song, or saying "Mr. Lieutenant hold," in a sarcastic voice. Brooks was the only one on the range with the hold. Inmate Joe McKenzie, is a witness to this.

45. Inmate McKenzie, is also a witness to Nurse Helton, stating to a guard, "Why don't you beat his ass," about another inmate who was being disrespectful to her. That Guard told the other inmate, "You want to go to the law library."

46. Because Big Sandy guards are not held accountable, they make threats, and carry them out.

COMPLAINT- BROOKS.        -10-        June 5, 2008

47. The continued harassment of threats by Taylor, saying "Snitches get stitches," was designed to intimidate Brooks so that he would not file administrative remedies.

48. The Assault Incident report given to Brooks by Silva, was not brought to completion before the Disciplinary Hearing Officer.

49. Silva in his action caused Brooks to suffer damaged property, physical and emotional injury.

## STATEMENT OF CLAIM

50. Silva beat Brooks; the beating violated the Plaintiffs' rights, and constituted Cruel and unusual punishment under the Eighth amendment of the U.S. Constitution. The beating occurred in Silva's individual capacity, acting maliciously and sadistically.

51. The United States of America, through its agent S. Silva, in his individual and official capacity, displayed gross negligence when he used excessive force, assaulting Brooks without just cause, in violation of 28 CFR 552, BOP.-PS. 5566; regulations covering use of force. The United States and its agent are named defendants under 28 USC 2671, Federal Tort Claims Act.

52. Defendants, Guy, Tuttle, Lieutenant Nix, conspired to deny Brooks' civil rights, when they failed to protect Brooks from Silva's intended assault, which deprived Brooks' right to protection from cruel and unusual punishment under the Eight amendment to the U.S. Constitution. Further, they conspired to cover up the whole incident, by making false statement to their employers; under 42 USC 1985 (3).

C. Prison officials, at U.S.P. Big Sandy (BSY), between May 1, 2007, through August 24, 2007, failed to properly adhere to BOP regulations regarding segregation review hearings. This constitutes gross negligence that resulted in the denial of the plaintiff's due process right and out of cell recreation.

53. 28 CFR 541.22, and BOP Policy 5270.07, Sec. 1 (c), <u>Review of Inmates Housed in Administrative Detention</u>, states, "--- The Segregation Review Official [SRO] will review the status of inmates housed in administrative detention. The SRO shall conduct a record review within three work days, of the inmates placement in admin. det. and SHALL HOLD A HEARING AND FORMALLY REVIEW the status of each inmate who spends seven consecutive days in admin. det., and thereafter shall review these cases on the record (in the inmates absence) each week, and SHALL HOLD A HEARING AND REVIEW THESE CASES FORMALLY AT LEAST EVERY THIRTY DAYS. <u>THE INMATE APPEARS BEFORE SRO AT THE HEARING UNLESS THE INMATE WAIVES THE RIGHT TO APPEAR.</u>"

54. Brooks was placed in segregation on December 18, 2005, because prisoners discovered that he had a sex offense. Brooks was transferred to Big Sandy-USP and then to Tucson-USP.

55. Not once in that period of time, between December 18, 2005 through April 27, 2008, did Brooks see the SRO, at any of the penitentiaries. Nor did any of the other prisoners held in admin. det. See, Appendix-DCNS.

56. S.R.O. hearings are required to prevent long term stays in admin. det., and to ensure that conditions in admin. det. are up to standards required by BOP regulations.

57. Among these standards, is recreation. Brooks had not been able to go out to recreation safely, and the denial of S.R.O. hearings denied Brooks the right to address his grievance, face to face, with a high ranking official.

58. Another reason for the S.R.O. hearing, is to ensure that prolonged stays in SHU are eliminate. The intention behind the policy is to put the inmate in front of officials frequently so that officials will be diligent with each case; To have them transferred or release them to general population as soon as practicable.

59. Denial of S.R.O. caused a violation of Brooks' Constitutional rights, of due process and out of cell recreation. Brooks suffered through much hardship at Big Sandy. Lack of out of cell recreation caused Brooks to go without exercise, fresh air and sunlight. His Cardio vascular health suffered, as well as the psychological suffering from being locked in a cell twenty-four hours a day with another prisoner.

## STATEMENT OF CLAIMS

60. Lieutenant Hapney, the S.R.O. in SHU at the time, violated the Plaintiff's rights, by denying Brooks formal Hearings, which constituted a violation of due process under the fifth amendment of the U.S. Constitution and 28 CFR 541.22, found in BOP Policy 5270.07.

61. Lieutenant Hapney, and other unknown defendants denied to Brooks, outdoor-out of cell recreation which violated the plaintiff's rights and constituted cruel and unusual punishment under the eighth amendment of the U.S. Constitution and

28 CFR 541.21, 22 found in BoP Policy 5270.07 Chapter 9.

## V. Exhaustion of Administrative Remedies

62. Brooks, did file grievances regarding the facts in this complaint under B.O.P. regulation. Appeal to the warden was filed August 6, 2007. Appeal to The Regional Director was filed November 15, 2007. Appeal to the Office of General Counsel was filed January 31, 2008.

63. See Appendix - AR.21 - AR.51 and TRT. 52-72. Brooks did everything humanly possible to ensure every avenue of administrative remedy was exhausted. Brooks initially filed two BP-229's on August 5, 2007. One was Remedy I.D. 463067 The other 463068.

64. 463067, was about the staff assault. The warden responded, but Brooks was transferred before receiving the response. AT Tucson, as soon as Brooks arrived on October 16, 2007, he began requesting that his Counselor retrieve both grievances. As soon as Brooks was able, he filed the regional appeals for 463067 and 463068.

65. The region answered 463068, but 463067, was never answered, acknowledged, or rejected. 70 days after filing 463067, in the region, Brooks filed 463067, with the office of General Counsel. and again, received no answer, rejection or acknowledgement.

66. Brooks sent a declaration to the Office of Internal Affairs, B.O.P. and The Office of Inspector General, D.O.J., in Washington. The declaration can be seen in the appendix - Dec.1. No response was given.

67. Brooks has also filed a Tort Claim, see, appendix, TRT.

## VI. OTHER LAWSUITS

A. Brooks has not filed other lawsuits dealing with the same facts raised in this action.

B. Brooks has one current lawsuit filed and pending review, and one that he voluntarily dismissed.

68. Timothy Brooks vs. Bureau of Prisons, et. al.
U.S. District Court for The Middle District of Florida, Ocala Div.
Civil Case No. 5:07-CV-65-GRJ    Filed: February 17, 2007.
This case regarding atypical prison conditions in SHU is still pending the required Judicial review under P.L.R.A.

69. Timothy Brooks vs. Gallegos
U.S. District Court for the District of Kansas
Civil Case No. 04-3111-SAC    Filed: April 2004
This case concerned Smoking ETS under Helling.
Brooks voluntarily dismissed the lawsuit due to mootness brought about by a transfer. Case dismissed March 1, 2007.

## VII. RELIEF

70. Plaintiff realleges and incorporates by reference paragraphs 1-67. Plaintiff prays that the court enter Judgement granting the plaintiff:
71. For the excessive use of force by Taylor, Silva, and Guy, five Thousand dollars, ($5,000.00) each defendant, for actual damages, and percentage to date.
72. For denial of due process and Conspiracy to deny civil rights punitive damages in the amount of Ten Thousand dollars, ($10,000.00)

Complaint - Brooks     15     June 20, 2008

73. For the denial of recreation over a two year period, Nominal damages in the amount the Court deems fit.

74. From all defendants, The filing cost for this claim in the amount of ($350.00) Three hundred and fifty dollars, plus any attorneys fees, if any.

75. Permenant injunction ordering the defendants to install security cameras in the hall way where the Lieutenants office and law library are located. The cameras must be able to view inside the law library and lieutenants office.

76. Permenant Injunction requiring the United States of America to fire (discharge) from employment, the defendants, Silva, Taylor and Guy and never again allow those defendants to be employed by the federal government.

77. Any other relief the Court deem reasonable.

VERIFICATION: Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is True and correct.

_Jim Brook_                  86832-079           JUNE 5, 2008
Signature of Plaintiff       Prison I.D. #       DATE

Plaintiff's Address:   U.S.P. Tucson
                       P.O. Box 24550
                       Tucson, AZ. 85734

Pages amended, one, two and 12-16, on June 20, 2008
                                              _Jim Brook_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
DIVISION AT PIKEVILLE

Timothy J. Brooks,
  Plaintiff,

V.                              Case No. 7:08-CV-105-KKC

S. Silva, et. al.,              CERTIFICATE OF SERVICE
  Defendants.

The following Defendants have been served via first class United States postal:
  S. Silva, P.O. Box 2067, INEZ, KY 41224
  Mr. Taylor, P.O. Box 2067, INEZ, KY 41224
  Mr. Guy, P.O. Box 2067, INEZ, KY 41224
  Lieutenant Hapney, P.O. Box 2067, INEZ, KY 41224

The Defendant, United States of America, has been served via First Class U.S. Postal, at, U.S. Department of Justice, Mr. M. Mukasey, U.S. Attorney General, Constitution Ave. and 10th St. N.W., Washington DC 20530.

The following attorneys for the defense have been served via first class U.S. Postal, Certified Mail:
Mr. James A. Zerhusen, U.S. Attorney, 260 W. Vine St., Suite 300 Lexington, KY 40507-1612    7005 0390 0000 8156 7649
Mr. M. Mukasey, U.S. Attorney General, Constitution Ave and 10th St. N.W., Washington DC 20530.    7005 0390 0000 8156 7656

I, Timothy Brooks, verify the foregoing is true and correct under penalty of perjury. Done this 7th day of July, 2008, at U.S.P. Tucson, P.O. Box 24550, Tucson, AZ. 85734. _Tim Brooks_
                                                     Timothy Brooks, Plaintiff