Not Recommended for Publication or Citation

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at PIKEVILLE)

CIVIL ACTION NO. 7:08-CV-105-KKC

TIMOTHY JASON BROOKS                                                                          PLAINTIFF

VS:              **MEMORANDUM OPINION AND ORDER**

MR. S. SILVA, et al.                                                                                   DEFENDANTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

This matter is before the Court on the parties' several motions, including the Defendants' Motion to Dismiss or in the Alternative, for Summary Judgment.

## BACKGROUND

On May 14, 2008, Timothy Jason Brooks, an individual in the custody of the Federal Bureau of Prisons ("BOP") and currently incarcerated in the United States Penitentiary, in Tucson, Arizona, initiated this civil action, *pro se*, complaining of events occurring when he was housed in the Segregated Housing Unit of another BOP facility, the United States Penitentiary-Big Sandy ("USP-Big Sandy"), in Inez, Kentucky. He asserted jurisdiction under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and under the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§ 1346(b), 2671-2680.

Brooks alleged that he suffered brutal treatment while at USP-Big Sandy because he is known to be a sex offender. Naming several BOP staff members as Defendants, Brooks claimed that the named Defendants (1) applied excessive force twice and refused him any daily exercise, in

violation of the Eight Amendment of the U.S. Constitution; (2) conspired to deprive him of his civil rights, actionable under 42 U.S.C. § 1985(3); (3) violated his due process rights, in confiscating his personal property and keeping him in the prison's Segregated Housing Unit ("SHU") without any of the required monthly hearings; and (4) were negligent in handling him with force and handling his personal property such that Plaintiff suffered bodily injury and his property was lost.  He sought a jury trial; damages; and injunctive relief in the form of the Court's ordering that cameras be placed in the law library and that the Defendants be fired.

After granting Plaintiff's Motion to Proceed *in forma pauperis* and screening his Complaint, on June 16, 2008, the Court issued a Memorandum Opinion and Order summarizing Brooks' factual allegations as follows:

> All of the complained-of events are alleged to have taken place in USP-Big Sandy's SHU, where Brooks was placed and continually held, based only upon his criminal offense.  According to the July 25, 2007, request for a remedy which he wrote to staff, Brooks was taken into the SHU on December 18, 2005, and remained there with no monthly reviews of that action and no opportunities for recreation. He initiated BOP Administrative Remedy Number 463068, seeking relief from his prolonged SHU detention without review.  According to his exhibits, Plaintiff exhausted the issue by writing to the final, National level of appeal just before filing this Complaint.
>
> Brooks initiated Administrative Remedy Number 463067 at approximately the same time. In it, he charged that he had twice been assaulted by SHU guards, attacks motivated by his criminal offense, not having any "penological interest whatsoever." The first assault purportedly occurred in a cell, on May 17, 2007, when Defendant [guards] Taylor and Guy twisted Plaintiff's arms and then Taylor used the food tray door to smash his arms. Brooks claims that as a result of this first assault, he has "scratches that have left scars that are still evident, and soreness to the shoulder and elbow of the left arm."
>
> The second purported assault took place on May 23, 2007, when Defendant Silva took Plaintiff to the law library and there assaulted him. Silva is alleged to have "maliciously and sadistically hit the plaintiff in the head," telling Plaintiff that he did

it because he doesn't like Brooks' crime or his "litigating." As to the injuries allegedly suffered in this attack, Plaintiff has written as follows:

> That resulted in a plumb [sic] size knot on the forhead [sic] above the right eye, which became a black-eye a week later; scratches on Brooks' face; pain in the lower back and joints; Brooks became extremely paranoid of guards plotting to kill him or cause more physical pain. Brooks woke up with nightmares and needed to take medication to deal with the anxiety and post traumatic stress symptoms.

Record No. 2 at 3.

Plaintiff contends that Silva took him to the law library with the purpose of assaulting him, as the lack of cameras there has facilitated attacks on inmates by guards in the past. Additionally, he alleges that Silva made up a story and an incident report to excuse his use of force, the officer purportedly explaining the injuries as occurring in his attempt to control Brooks when the prisoner spat at him. The Plaintiff insists, however, that he has "fifteen years of well documented behavior. You can't find one incident where I spit at or on a guard. I have never assaulted anyone, guard or inmate. It is against my character."

Plaintiff claims that he did all he could do to exhaust these claims administratively, but before he could even receive the Warden's responses to either #463067 or #463068, the BOP transferred him across the country, a move which interrupted his mail and his administrative efforts. Brooks claims that he left USP-Big Sandy on August 24, 2007, and other attachments show that he did not arrive at USP-Tucson until November 7, 2007. Nonetheless, upon arrival and receipt of forwarded mail, Plaintiff resumed the administrative process on both claims. He states that he wrote appeals to the Regional Director and National Offices, sent a declaration to the Office of Internal Affairs, and also filed a tort claim under the FTCA when Kentucky's one-year statute of limitations was quickly running out.

Plaintiff has attached to his Complaint, two inmate injury assessments, one dated May 17th and the other May 23rd of 2007, the dates of the alleged assaults. . . .

Attached exhibits also include a copy the May 1, 2008, letter from the BOP acknowledging receipt of Brooks' FTCA claim for $5,248.94 "for alleged loss of personal property and personal injury at USP Big Sandy." Most of the attachments to Brooks' Complaint, however, are documents exchanged in the BOP administrative remedies numbered #463067 and #463068 and/or documents concerning the interruption in that process purportedly occasioned by his transfer, as well as copies of his attempts to resume the two processes once he was re-located.

>Claiming that he has done "everything humanly possible to ensure every avenue of administrative remedy was exhausted" and having attached copies of these efforts, Brooks filed the instant Complaint on May 14, 2008.

Record No. 6 at 2-4.

At the end of the screening Order, the Court dismissed certain Defendants for Plaintiff's failure to state a claim against them; the claims for damages against remaining Defendants Silva, Taylor, and Guy, in their official capacities, on the ground of the United States' sovereign immunity; and all claims for negligent loss of prisoner property, under the FTCA, based upon 28 U.S.C. § 2680(c) and its recent interpretation in *Ali v. Federal Bureau of Prisons*, ___ U.S.___, 128 S.Ct. 831 (2008), which held that a BOP officer holding prisoner property is exempt from liability upon any loss or destruction of that property.

The Court directed service of summons on the United States of America for the FTCA claim; and on USP-Big Sandy Officers S. Silva, Taylor,[1] and Guy, in their individual capacities. Since that time, the Plaintiff has filed an Amended Complaint [Record No. 13], in which he adds Lt. Hapney as a Defendant in his individual capacity with the allegation that he was the Segregation Review Official ("SRO") in SHU who did not conduct the periodic reviews of his placement there. Brooks attached a 97-page Appendix containing, *inter alia*, declarations of 2 prisoners who were witnesses to the alleged events at USP-Big Sandy and of 2 other prisoners who were at USP-Big Sandy at another time and attest to similar treatment given them there as sex offenders.

---

[1] In the Plaintiff's Amended Complaint, at page 4, Brooks describes one of the assailants, named Taylor, as standing "approximately 6 foot 5 inches and weigh[ing] around 230 pounds." In today's dispositive motion, the Defendants state that there is no correctional officer named Taylor and a Taylor ever worked at the USP-Big Sandy. For this reason, service of the summons and complaint for "Officer Taylor" was not accepted at the USP-Big Sandy.

All of the Defendants, by Assistance United States Attorney, have now responded to the Complaint with the dispositive Motion before the Court today.

## DEFENDANTS' MOTION

The Defendants move for dismissal or for entry of summary judgment in their favor on several grounds.

The government first addresses Plaintiff's claim that Silva and 2 other Defendants were so grossly negligent in performing their duties that he suffered injuries at their hands on May 17th and May 23rd of 2007. The United States urges dismissal of this claim as appropriate because this Court does not have FTCA subject matter jurisdiction over such alleged intentional conduct and/or the Plaintiff has failed to state an FTCA claim.

The United States points out that the FTCA is a limited waiver of sovereign immunity and provides money damages only for injuries or losses "caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment." 28 U.S.C. § 2672. The government then contends that the Plaintiff's claim falls outside the FTCA because the complained-of acts, two assaults by guards, were allegedly intentional, not negligent, and also because the officers were not acting within the scope of their employ in beating him. Therefore, the Court purportedly lacks subject matter jurisdiction and the Plaintiff has failed to state a negligence claim upon which the Court may grant relief.

As to Plaintiff's other federal claims, the BOP Defendants urge dismissal for the Plaintiff's failure to exhaust the BOP's administrative remedies with regard to any of them prior to filing this lawsuit. With the supporting declaration of a BOP attorney, who had examined records of administrative remedies filed by prisoners, the Defendants recite this Plaintiff's administrative

5

remedy history, and they attest to those records revealing that Brooks did not properly exhaust any administrative remedy. Therefore, they urge that Plaintiff's remaining claims be dismissed or summary judgment entered in the Defendants' favor.

**Plaintiff's Response**

Plaintiff has filed his own competing affidavit and a Response [Record Nos. 34-35], and he also points to his original Complaint and Amended Complaint with its sizeable Appendix [hereinafter "APP."] of exhibits [Record No. 13], to support his opposition to the Defendants' Motion.

Plaintiff asks that the remaining FTCA claim, *i.e.*, about the two assaults by guards, not be dismissed at this time, before discovery. He presents copies of the injury assessments done on the days of the alleged assaults, May 17th and May 23rd of 2007 (App. 67-68), and explains his position as follows: "Brooks claims intentional assault because this is how it appears to him. However, after all the evidence is presented, a fact finder may come to the conclusion that the force was justified, but the injuries were cause by negligence." Record No. 34 at 3.

With regard to the civil rights claims, Plaintiff insists that he did all that he could do to exhaust the BOP administrative remedies and that he should be deemed to have exhausted them, since the time-gap in the administrative chain of events was caused by the BOP. By filing his complaints on BP-9 forms, he initiated the formal administrative processes which became Remedies No. 463067 and 463068. However, the BOP transferred him out of USP-Big Sandy on August 24, 2007, before he could receive the Warden's responses.

Plaintiff alleges that he did not arrive at USP-Tucson until October 16, 2007. The very next day, he purportedly sent a request to a counselor named Whitfield to retrieve both of his BP-9's and

the responses to them so that he could continue the administrative process to exhaustion. After receiving the responsive documents from her, Brooks purportedly filed his appeals first to the BOP Regional Director and then the National Office. He claims thereby to have exhausted the administrative process with regard to both Remedies, No. 463067 and No. 463068.

## DISCUSSION

The Court begins with conditions precedent to the Plaintiff's filing of the instant lawsuit before proceeding to discuss the merits of the Defendants' Motion or Plaintiff's opposition.

### FTCA Claims

The FTCA has its own, simple, one-step administrative system for all would-be plaintiffs. Before a plaintiff can maintain an action under the FTCA, he must first exhaust its administrative remedy process. This means filing a standard Form 95 claim with the agency within two years after the claim accrued. *See* 28 U.S.C. § 2675(a); *Conn v. United States*, 867 F.2d 916, 918 (6th Cir. 1989). Prisoners must file their claims with the regional office of the Bureau of Prisons in the region where the tort happened, and upon denial of the claim(s), the process is completed. *See* 28 C.F.R. § 543.30 *et seq*. Plaintiff must then file the lawsuit within six months of the denial in order to pursue the claim under the FTCA in federal court. *Tinker-Bey v. Meyers*, 800 F.2d 710 (7th Cir. 1986). The instant Plaintiff has clearly satisfied the FTCA precondition to suit with regard to the two issues on his Form 95, the loss of his personal property and the two assaults by guards.

In the earlier Order directing that summons issue, this Court dismissed the FTCA claim about the BOP's loss of Brooks' personal property. The sole remaining FTCA claim is that the Plaintiff's injuries of May 17th and May 23rd of 2007, which he initially described as the result of the assaults, may have been negligently inflicted. Since the FTCA has its own administrative scheme and the

Defendants have not denied that Brooks timely completed it, there is no impediment to the Court's addressing the merits of the United States argument that the Court does not have subject matter jurisdiction over this negligence claim and/or the Plaintiff has failed to state a claim.

The Court begins with traditional principles of sovereign immunity, under which the United States, as sovereign, is immune from suit except to the extent the government has waived its immunity. In 1946, Congress adopted the FTCA which, subject to numerous exceptions, waives the sovereign immunity of the federal government and confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government for negligence of its employees. 28 U.S.C. §1346(b)(1). In relevant part, the FTCA authorizes suits against the government to recover damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA thereby constitutes the United States limited waiver of sovereign immunity, limited to cases in which "a private individual [would be liable] under like circumstances," 28 U.S.C. § 2674. It provides the exclusive remedy for tort actions against the federal government, its agencies and employees. *Ascot Dinner Theatre v. Small Business Admin.*, 887 F.2d 1024, 1028 (10th Cir. 1989). In giving consent to suit in particular circumstances, the FTCA defines the scope of district court jurisdiction to entertain FTCA suits. *See* 28 U.S.C. § 1346(b).

The United States contends that the Court does not have jurisdiction over the instant "negligent assault" claim because the FTCA covers negligence, not intentional acts, and because the

correctional employees were not acting within the scope of their office or employment in allegedly beating the Plaintiff. *Id*. Liability under the FTCA is determined by reference to the law of the state where the alleged injury occurred; 28 U.S.C. §1346(b); *Arbour v. Jenkins*, 903 F.2d 416, 422 (6th Cir.1990).

In the case of *Flechsig v. United States*, 786 F. Supp. 646 (E.D. Ky. 1991), *affirmed*, 991 F.2d 300, 303-04 (6th Cir.1993), the Plaintiff was assaulted by a correctional officer escorting her from the federal prison to a medical appointment, in Lexington, Kentucky. The Sixth Circuit was required to examine whether the prison employee acted within the scope of his employment with the BOP under Kentucky law.

*Flechsig* explained that under Kentucky law, "as a general rule it is not within the scope of a servant's employment to commit an assault upon a third person and the master is not liable for such an assault though committed while the servant was about the master's business." *Id*. at 303. (quoting from *Southeastern Greyhound Lines v. Harden's Adm'x*, 281 Ky. 345, 136 S.W.2d 42, 45 (1940) and *Fournier v. Churchill Downs-Latonia, Inc.*, 292 Ky. 215, 166 S.W.2d 38 (1942)). As the correctional officer was not acting in the scope of his employment by assaulting the prisoner, the United States was not liable.

In this case, the Court will adopt the *Flechsig* holding, based on Kentucky law, that the FTCA will accept liability only for personal injury suffered as the result of negligence on the part of an employee or officer of the United States, while the employee was acting in the course of his employment. The FTCA will not be liable for the conduct of its employees acting for the purpose of meanness or anger or dislike or aggravation. *Id*. at 303. Therefore, the instant Plaintiff has failed to state a cognizable claim under the FTCA.

9

This result is also reached alternatively, under law within the FTCA itself. Congress has exempted certain categories of claims from the FTCA waiver of liability, including what is known as the "intentional tort exception." 28 U.S.C. §2680, **Exceptions**, consists of subsections (a)-(n), the relevant part of which states:

> The provisions of this chapter and section 1346(b) of this title **shall not apply to**–
> . . . .
> **(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights**: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law. (Emphasis Added)

28 U.S.C. §2680(h).

There is, however, an exception to this exception. Claims of assault and battery against "investigative or law enforcement officers of the United States Government" are covered by the FTCA. *Id*. An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *McLittle v. United States*, 2005 WL 2436714, *4 (W.D. Tenn., Sept. 29, 2005) (Not Reported in F. Supp. 2d).[2]

---

[2] This Court's original disposition of the *Flechsig* case is instructive on the issue the applicability of the "law enforcement officer" exception in the case at bar. In *Flechsig*, the correctional officer met the definition of "law enforcement officer" under §2680(h). This Court determined, however, that the assault against that plaintiff did not occur in the course of a search, seizure or arrest, as required by statute. *Flechsig*, 786 F. Supp at 648. The Sixth Circuit affirmed this Court's decision in *Flechsig* on other grounds.

Stated differently, "the United States is not liable for claims arising out of assault and/or battery committed by federal employees within the scope of their employment unless the employee was an investigative or law enforcement officer." *McKinney v. United States of America*, 2005 WL 2335318 (M.D. Pa. 2005) (not reported). In *McKinney*, even though the United States conceded that the correctional officer who had assaulted an inmate may be deemed an investigative/law enforcement officer for purposes of Section 2680(h), the plaintiff could not obtain relief under the FTCA, because, "although the purported conduct in the present case is outrageous, it did not take place during an arrest, search, or seizure of evidence." *Id.* at *4. The same is true herein.[3]

In construing exceptions to waivers of sovereign immunity, the Supreme Court of the United States has instructed that the federal courts must "identify those circumstances which are within the words and reason of the exception--no less and no more." *Kosak v. United States*, 465 U.S. 848, 854 n.9 (1984). Otherwise, "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the [FTCA]." *Id.*

In *Pooler v. United States*, 787 F.2d 868, 872 (3rd. Cir. 1986), discussed in *McKinney*, the federal court found the legislative history helpful. The law enforcement officer exception was enacted to provide a remedy against the United States in situations where law enforcement officers conduct "no-knock" raids or otherwise violate the Fourth Amendment and the rationale for this exception centered on the risk to members of the public in certain actions, such as an arrest.[4]

---

[3] Unlike Plaintiff McKinney, however, the instant Plaintiff also proceeded with the BOP administrative remedy process in order to bring the assault claims under the Eighth Amendment and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

[4] *Pooler* discussed the legislative history behind "law enforcement exception" of the FTCA, and concluded the application of the exception was a narrow one. The court said:

"No matter how generously we read them, however, the complaints do not charge that Kimmel

To apply the "law enforcement officer" exception to the facts of this case would essentially destroy the purpose and intent of the general rule: that the United States is not liable when a federal employee intentionally commits an assault and battery on someone. The Court determines that the exception in §2680(h) is reserved for the specific instances where law enforcement officers violate a person's constitutional rights *in the course of a search, seizure or arrest. See Pooler v. United States*, 787 F.2d at 872 (emphasis added) (where complaint failed to allege that the federal agent committed an intentional tort while executing a search, seizing evidence, or making an arrest pursuant to §2680(h), district court properly found that the "law enforcement exception" did not apply). Accordingly, the Court will not apply the "law enforcement exception" of the FTCA to the facts of this case.

In sum, the Court finds that the Plaintiff's remaining FTCA claim, charging negligence in two alleged assaults, should and will be dismissed for failure to state a claim upon which the Court may grant relief.

---

committed an intentional tort while executing a search, seizing evidence, or making an arrest. We read the 1974 amendment to section 2680(h) as addressing the problem of intentionally tortious conduct occurring in the course of the specified government activities. It is in the course of such activities that government agents come most directly in contact with members of the public. The government places them in such a position, thereby exposing the public to a risk that intentionally tortious conduct may occur. That Congress intended to deal only with conduct in the course of a search, a seizure, or an arrest is confirmed by the sparse legislative history of the 1974 amendment. **The Senate Report on the amendment states that the proviso was enacted to provide a remedy against the United States in situations where law enforcement officers conduct "no-knock" raids or otherwise violate the fourth amendment**. *See* S.Rep. No. 588, 93d Cong., 2d Sess. 2-3 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 2789, 2790-91."

*Pooler*, 787 F.2d at 872 (Emphasis Added). In *Flechsig*, 991 F. Supp. 2d at 302-304, this Court adopted *Pooler*'s rationale. The Sixth Circuit affirmed *Flechsig* on other grounds.

## Civil Rights Claims

The Defendants have relied upon only the exhaustion issue as grounds for dismissal of the remaining claims. They are correct that prisoners must satisfy a different precondition for civil rights cases under federal law. Effective April 26, 1996, a statute requires that prisoners exhaust whatever administrative remedies are available to them prior to filing any lawsuit. The statute provides in pertinent part as follows:

> Title 42, United States Code § 1997e, **Suits by Prisoners**
>
> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
> . . .

42 U.S.C.A. § 1997e(a). Further, the statute provides for dismissal of meritless claims which have not been exhausted. § 1997e(c).

Prisoner actions brought pursuant to *Bivens* are subject to this administrative exhaustion requirement "whether their claims involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 524 (2002).[5] Moreover, the Supreme Court of the United States has also ruled that "exhaustion" means "proper exhaustion," *i.e.*, in conformity with the provisions of the administrative scheme, such as meeting any time deadlines. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006).

---

[5] In *Porter*, an inmate sued the correctional officers who had severely beaten him. The inmate alleged that the correctional officers "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair." 534 U.S. at 520.

The administrative remedies available to inmates confined in Bureau of Prisons institutions, including the instant Plaintiff, are set out in the the BOP's four-step Administrative Remedy Program, which begins with attempted informal resolution with prison staff (a BP-8 form). *See* 28 C.F.R. §§ 542.10-.19 (1998). If the inmate cannot informally resolve his complaint with a staff member, then he may file a formal written request (a BP-9 form) to the Warden, in conformity with Section 542.14. If the BOP inmate is not satisfied with the Warden's response, he has two opportunities to have the issue addressed outside the prison. He may appeal (a BP-10) to the BOP's Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel. *See* Section 542.15 (a) - (b).

The procedures include response times. Section 542.18. The Warden has 20 days to respond; the Regional Director has 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id*.

The instant Plaintiff claims that he followed all the above-described steps, thereby exhausting the conditions precedent to bringing his other federal claims herein. It was the BOP's action in transferring Brooks away from USP-Big Sandy, on August 24, 2007, which interrupted the time intervals so that he was late in obtaining copies of his BP-9's responses, and therefore, late in proceeding to the two highest level of appeal. However, Brooks contends, he finished the processes nonetheless, with the help of Counselor Whitman.

The Court examines both remedies at issue herein for exhaustion. It was in Remedy No. 463067 that the Plaintiff complained of the two assaults by Defendants Silva, Taylor and Guy.

14

Appendix Numbers 22 to 37. In the August 5, 2007, BP-9 to the warden, Plaintiff described both assaults; the warden's response was:

> This matter has been referred to the appropriate department for investigation. As with any investigation involving staff, you will not be notified of the outcome.
>
> Based on these findings, your Request for Administrative Remedy is neither granted nor denied, but is for informational purposes only.
>
> If you are dissatisfied with this response, you may appeal to the Regional Director, Mid-Atlantic Region, 10010 Junction Drive, suite 100-N, Annapolis Junction, Maryland 20701, within 20 calendar days of the date of this response.

App. 25, dated August 22, 2007. After Ms. Whitman showed him a copy of his BP-9 and this response, on November, 15, 2007, the Plaintiff sent the documents with his BP-10 to the Regional level, but got no response. Therefore, Brooks explains, he assumed a lack of response to the BP-10 to be a denial at that level, as permitted under 28 C.F.R. § 542.18, and on January 31, 2008, he sent a BP-11 to the BOP's Office of General Counsel. It, too, elicited no response, and so he again assumed the lack of a response to be another denial when the time ran for a response.

The only response during these efforts was on February 11, 2008, when "Ms. Whitfield brings an e-mail from the regional administrative remedy clerk, that stated the region has no record of appeal # 463067-R1." App. 33(a). This Court recognizes that this is no doubt true, because the Defendants have now admitted, *via* their Declarant BOP attorney, that the day after the warden responded to Brooks' BP-9, as quoted above, on August 23, 2007, this remedy was closed. Regardless, the Plaintiff contends, he had taken every step administratively and exhausted the assault claims in preparation to suit.

The Defendants also rely on the Plaintiff's purported failure to exhaust the administrative process as a defense to Plaintiff's complaints that he did not have monthly reviews of his SHU

15

placement or have recreation alone status, while he was SHU at Big Sandy. Plaintiff's Amended Complaint contains the exhibits relevant to this remedy, Remedy No. 463068, at App. 38-45. One is a copy of the warden's August of 2007 response to Brooks' BP-9, in which the warden stated that the Plaintiff had the regular reviews but they were "conducted at the inmate's assigned cell;" and that Plaintiff had not shown a need for recreation alone status. The warden concluded his BP-9 response as follows:

> Based on these findings, your Request for Administrative Remedy is neither granted nor denied, but is for informational purposes only.
>
> If you are dissatisfied with this response, you may appeal to the Regional Director, Mid-Atlantic Region, 10010 Junction Drive, Suite 100-N, Annapolis Junction, Maryland 20701, within 20 calendar days of the date of this response.

App. 41, dated August 29, 2007.

Upon tardily receiving this Remedy No. 463068 document, Plaintiff allegedly took up the task of proceeding to exhaust the administrative remedy process on this matter also. Brooks' initial BP-10 to the Regional Director was evidently rejected as untimely. He provides the Court with his completed BP-10, which is identified as Remedy No. 463068 and stamped with two dates of arrival in the Regional Director's Office, one in November and then again in December of 2007. The Court assumes that between these two dates, the Plaintiff demonstrated that his transfer was the reason for the BP-10's tardiness, as the BP-10 was accepted upon its second presentation.

Most importantly, the Regional Director's response to the BP-10 in No. 463068 was on the merits. The Regional Director informed Plaintiff that his records "clearly indicate[] you were provided SRO hearings" and that the SRO did not have to release him from his cell in order to

16

provide him the 30-day hearings. The Regional Director did not, however, mention the recreation issue. His response concludes,

> . . . Accordingly, this response is provided for informational purposes only.
>
> If dissatisfied with this response, you may appeal to the Office of General Counsel, Bureau of Prisons, 320 First Street, N.W., Washington, D.C., 20534. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

App. 42(b), dated February 1, 2008.

Brooks' final two exhibits with regard to Remedy No. 463068 are his February 15, 2008 appeal to the BOP's highest level, the Office of General Counsel, and that Office's acknowledgment of receipt of the appeal (App. 79) on February 27, 2008. In this acknowledgment, the Office promised a response by April 7, 2008. According to Plaintiff, however, he never received a response. Therefore, he again treated the lack of a response at the final level to be a denial at that level, and he filed this lawsuit.

Both parties' positions are facially correct. The Defendants are correct when they say that neither of the two administrative remedies at issue was properly exhausted as provided in the BOP's administrative scheme set out above. However, the Plaintiff also appears to be correct in that he finished every step of the administrative process, doing all that he reasonably could do, to exhaust that process after his submission of the two BP-10's – despite the BOP's action of moving him across the country to another facility and taking two full months to accomplish the transfer. There is a provision in the regulations for a prisoner's taking additional time to complete in the BOP's administrative remedy process in certain circumstances. The relevant portion of the BOP administrative scheme provides as follows:

17

>(b) Extension. Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: *an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal*; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

28 C.F.R. § 542.14(b) (emphasis added). This not only provides an excuse for the timeliness problem herein but also may have been the reason that Plaintiff's BP-10 in Administrative Remedy No. 463068 was accepted and responded to.

Regardless, the Court finds that there is an genuine issue of material fact on whether the Plaintiff properly exhausted both Remedy Nos. 463067 and 463068, and the Court, therefore, must deny the Defendants' Motion to Dismiss or for Summary Judgment grounded in the Plaintiff's failure to exhaust them. There is not yet enough evidence for the Court to be confident in ruling for either party at this time. There has been no discovery and the facts on this issue can be developed in due course.

This result is also consistent with the lesson to be learned from a similar case, *Womack v. Smith*, 2009 WL 347469 (3rd Cir. 2009) (not selected for publication). The federal prisoner therein had been physically restrained and isolated for a substantial period of time, thus missing the deadline for timely filing his initial grievance, and the District Court held that his procedural default was not to be excused. On appeal, the Third Circuit wrote, "Because disputed issues of material fact preclude summary judgment on both the exhaustion issue and the Eighth Amendment claim, we will reverse and remand." *Id.* at *1.

## CONCLUSION

Accordingly, this Court being advised, it is **ORDERED** as follows:

(1)     To the extent that the United States Motion to Dismiss [Record No. 32] is grounded in the Plaintiff's failure to state an cognizable claim under the FTCA, the Motion is **GRANTED**, and the remaining FTCA claim regarding the purported assaults of May 17 and 23 of 2007 is **DISMISSED** on the merits.

(2)     To the extent that the Defendants' Motion to Dismiss [Record No. 32] is grounded in the Plaintiff's failure to exhaust the Bureau of Prisons administrative remedy program, the Motion is **DENIED**, without prejudice.

(3)     Plaintiff's pending Motion [Record No. 36] to permit him to add an affidavit as another exhibit to his opposition is unopposed and is **GRANTED**.

(4)     Defendants' recent Motion to Stay Discovery [Record No. 37] is **GRANTED** at this time and all discovery in this case is **STAYED** until a scheduling Order issues.

Dated this 1st day of May, 2009.

Signed By:
*Karen K. Caldwell*   KKC
United States District Judge